UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:** (IN CHAMBERS) - DEFENDANT HENGLIN HOME FURNISHINGS CO., LTD.'S 12(B)(2) MOTION TO DISMISS FIRST AMENDED COMPLAINT (Dkt. 26, filed on February 21, 2025)

## I. INTRODUCTION & BACKGROUND

On August 22, 2024, plaintiff Factory Direct Wholesale, LLC ("FDW") filed this action against defendant Henglin Home Furnishings Co., Ltd. ("Henglin"). Dkt. 1. The background of this case is well-known to the parties and set forth in the Court's order dated March 24, 2025, which is incorporated here by reference. See dkt. 31 at 2-4.

On January 17, 2025, Henglin moved to dismiss FDW's complaint. Dkt. 23. On February 7, 2025, FDW filed a first amended complaint, dkt. 24 ("FAC"), thereby mooting Henglin's motion, dkt. 25. FDW, a citizen of Georgia, alleges that Henglin, a citizen of China, engaged in unfair pricing and U.S. customs import fraud to gain an unfair advantage over FDW, in violation of the "unlawful" and "unfair" prongs of California's unfair competition law, Cal. Bus. & Prof. Code § 17200. FAC ¶¶ 10, 12, 50-52. FDW seeks restitution and injunctive relief permanently enjoining Henglin from "illegally and unfairly undervaluing its goods." Id. at 14.

On February 21, 2025, Henglin filed a motion to dismiss FDW's FAC, arguing that this Court lacked personal jurisdiction over Henglin.[1] Dkt. 26. On March 3, 2025, FDW filed an opposition. Dkt. 27. On March 10, 2025, Henglin filed a reply. Dkt. 28.

---

[1] Henglin also moved to dismiss the FAC under Rule 12(b)(6). See dkt. 26 at 13-16. The Court continues to reserve judgment on the Rule 12(b)(6) motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

On March 24, 2025, the Court held a hearing and issued an order, directing the parties to pursue limited jurisdictional discovery for 60 days and to file supplemental briefing thereafter. Dkt. 31. On June 16, 2025, FDW filed its supplemental opposition brief in support of personal jurisdiction, including 21 exhibits. Dkt. 34 ("Supp. Opp."). On June 30, 2025, Henglin filed its supplemental reply brief, including six exhibits. Dkt. 35 ("Supp. Reply").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   LEGAL STANDARD

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant submits evidence controverting the allegations, however, the plaintiff may not rely on its pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir.1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir.1977)).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154-55 (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state and federal law are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id. (finding no general jurisdiction when the corporation was not registered or licensed to do business in California, paid no taxes, maintained no bank accounts, and targeted no advertising toward California).

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). The plaintiff bears the burden of satisfying the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

first two prongs, and must do so to establish specific jurisdiction. Schwarzenegger, 374 F.3d at 802.

If the plaintiff establishes the first two prongs, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the "extent of the defendant's purposeful injection into the forum"; (2) the burdens on defendant from litigating in the forum state; (3) the "extent of conflict with the sovereignty of the defendant's state," (4) the forum state's "interest in adjudicating the dispute"; (5) the "most efficient judicial resolution of the controversy"; (6) the "importance of the forum to the plaintiff's interest in convenient and effective relief"; and (7) the existence of an alternative forum. Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir. 1995).

### III.   DISCUSSION

In its order dated March 24, 2025, the Court limited the scope of jurisdictional discovery to the following: "(1) whether Henglin exports its products to California; (2) Henglin's involvement, if any, in the import of its products to California; (3) whether Henglin intends, directs, or targets its products to be sold in California; and (4) whether Henglin targets its activities at California importers, retailers, and distributors, including its affiliate eFulfill." Dkt. 31 at 11. The Court ordered this discovery "to ascertain whether Henglin exports its products to California and whether it expressly aims its activities toward California through its contacts with and targeting of California importers, retailers, and distributors." Id.

#### A.   The Parties' Arguments

In its supplemental opposition brief, FDW contends that admissible evidence shows that Henglin exports its products to California. Supp. Opp. at 9. FDW relies on several bills of lading, subpoenaed from one of Henglin's Los Angeles-based logistics partners, which identify Henglin as the "Shipper/Exporter" of record for thousands of cartons of chairs shipped from mainland China to the ports of Los Angeles and Long Beach between November 2023 and March 2025. Id. at 6.

FDW next argues that, in connection with those exports, Henglin expressly aimed its activities at California through its contacts with and targeting of its California-based logistics partners and consignees, including its subsidiary, Nouhaus, Inc., as well as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

Quartz Logistics, Tmall, Inc., and Acme Furniture Industry, Inc. Id. at 9. FDW relies on Henglin's 2024 Semi-Annual Report, which describes Henglin's "to-C" or "to customer" model. Id. at 6. FDW argues that the 2024 Semi-Annual Report shows that Henglin's e-commerce sales channels cover Amazon, Walmart, and others to create a "direct-to-consumer sales network." Id. FDW asserts that under the "to-C" model, Henglin establishes overseas warehouses in "target markets abroad," describing these warehouses as "close to target consumers." Id. FDW argues that the warehouse of Nouhaus, Inc. in Fontana, California—which is under a lease agreement guaranteed by Henglin—is an example of "one of those warehouses close to target consumers in California." Id. at 9-10. FDW asserts that this shows that Henglin targets its products to be sold through Amazon and other U.S. online e-commerce platforms directly to California consumers, all through contacts that Henglin created itself. Id. at 9-10.

 FDW next argues that the fraud alleged in its complaint arises out of Henglin's export of products directly into the ports of Los Angeles and Long Beach. Id. at 10. According to FDW, Henglin's fraudulent conduct caused FDW's injuries because FDW and Henglin are direct competitors, and the loss in FDW's sales and market share would not have occurred but for the unfair price advantage obtained by Henglin through its unlawful conduct. Id. FDW also argues that the question of whether Henglin engaged in import fraud is a merits issue, but that nevertheless, Henglin's November 2024 company briefing about the impact of U.S. tariffs on its business "clearly show[s] that Henglin pays tariffs on its exports to California." Id. at 10, n.5.

 In its supplemental reply brief, Henglin argues that the Court lacks personal jurisdiction over it. Supp. Reply at 4. First, Henglin contends that FDW's claims do not arise from or relate to Henglin's California-related activities. Id. at 5. This is because, according to Henglin, FDW's claims center on Henglin's alleged import fraud, but FDW has no evidence that Henglin ever imported goods into California. Id. Henglin asserts that it asked FDW, via jurisdictional interrogatory, to state facts that support its contentions regarding personal jurisdiction, to which FDW responded that it would produce documents as provided by Federal Rule of Civil Procedure 33(d)—but no such documents were ever produced. Id. Henglin states that the bills of lading are the sole pieces of evidence that connect Henglin with California, showing only that "Henglin sold goods in Asia to buyers located in the United States who routed the goods through [California]." Id. at 6. Henglin also argues that FDW's reliance on public disclosures that discuss Henglin's subsidiaries is "misplaced," because consolidated reporting

Case 2:24-cv-07118-CAS-PD   Document 36   Filed 07/29/25   Page 6 of 14   Page ID #:1730

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

between a parent and subsidiary is "usual business practice" and does not support jurisdiction in the absence of an alter ego relationship. Id.

Second, Henglin argues that it would be unreasonable to subject Henglin to the Court's jurisdiction, as FDW "has no evidence" that Henglin acted as an importer. Id. Henglin describes two of the jurisdictional interrogatories that it served on FDW during the discovery period, which allegedly show that FDW "has no facts" to prove that FDW's claims arise out of Henglin's conduct and that Henglin's exported products compete directly with FDW's products. Id. at 7. Henglin also argues that jurisdiction would be unreasonable because FDW's FAC is "incoherent" and "cannot decide if Henglin is the importer or the exporter, both, or something else." Id. at 8.

Third, Henglin argues that FDW's conflation of Henglin with its subsidiaries is improper, because "in order for the forum contacts of a subsidiary to create jurisdiction in the parent, the two must be alter egos." Id. Henglin contends that FDW has not made a showing of alter ego here. Id. at 9. Fourth, Henglin disputes FDW's discussion of Henglin's operations on Amazon and other online retail platforms, asserting that "none of the brands are owned by Henglin." Id. Additionally, Henglin contends that Amazon sales on a national basis do not establish California contacts, and that Amazon sales do not relate to FDW's alleged injury, which centers on import fraud. Id. at 10. Henglin argues that even if it engaged in all of the internet sales described by FDW, it would be immaterial, because "selling home goods via web platforms and fraudulent conduct committed at import" are "completely different[.]" Id.

### B. The Court's Findings

Courts "use a three-prong test for analyzing claims of specific personal jurisdiction." Oceanside Health Prods., LLC v. Dvir Deri, LLC, No. 23-55481, 2024 WL 2269270, at *2 (9th Cir. May 20, 2024). These prongs include:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

    (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id. "The plaintiff bears the burden of satisfying the first two prongs of the test." Schwarzenegger, 374 F.3d at 802. If the plaintiff succeeds, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. For the purposes of this analysis, "the [C]ourt resolves all disputed facts in favor of the plaintiff." Pebble Beach, 453 F.3d at 1154.

    Beginning with the first prong, which encompasses both "purposeful availment" and "purposeful direction," the Court employs the purposeful direction test, given that the present case, centered on allegations of fraud, "sounds in tort." Herbal Brands, Inc. v. Photoplaza, Inc., 72 F.4th 1085, 1091 (9th Cir. 2023). "We evaluate purposeful direction under the three-part 'effects' test traceable to the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984)." Schwarzenegger, 374 F.3d at 803. "The Calder effects test asks whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Herbal Brands, 72 F.4th at 1091 (citations and quotations omitted).

    Here, it appears that Henglin does not dispute that the first prong, requiring "purposeful direction," is satisfied, as Henglin's supplemental reply brief focuses largely on the second and third prongs of the analysis. The Court finds that FDW has satisfied its burden of making a prima facie showing that Henglin purposefully directed its activities at California. See Cummins v. Lollar, No. CV 11-08081-DMG-MANx, 2013 WL 12124089, at *3 (C.D. Cal. Feb. 11, 2013) ("'[P]rima facie showing' means that the plaintiff has 'produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction.'") (citations omitted). Evidence submitted by FDW shows that Henglin is listed as the "Shipper/Exporter" of record on bills of lading describing the shipments of thousands of cartons of chairs into the ports of Los Angeles and Long Beach from November 2023 to March 2025. See dkt. 34-22, Ex. 20; dkt. 34-23, Ex. 21. These cartons were shipped to California addresses for the following consignees: Nouhaus, Inc., Acme Furniture Industry, Inc., and Tmall, Inc. See id. The Court finds that this evidence appears to contradict the declaration attached to Henglin's motion to dismiss, in which Henglin's Vice President asserted that it "is not true" that Henglin "directly export[ed] products from China to the ports of Los Angeles and Long Beach in California from December 2023 through December 2024." See dkt. 26-1 ¶ 3. Given that the Court must resolve all disputed facts in favor of FDW, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

concludes that, for the purpose of this motion, FDW has established that Henglin committed an "intentional act" by exporting its products to the forum state. See Pebble Beach, 453 F.3d at 1154.

　　Further, the Court finds that Henglin's 2024 Semi-Annual Report provides evidence that Henglin "expressly aimed" its activities toward California.[2] The express aiming prong is satisfied when a defendant specifically tailors its activities to target the forum state. See Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 981 (9th Cir. 2021). Statements in Henglin's 2024 Semi-Annual Report suggest that Henglin takes actions to target consumers in California. For example, a sub-section titled "Synergy Between Cross-Border E-Commerce and Overseas Warehousing" states:

> With a complete and robust supply chain, the Company continues to scale up its brand globalization strategy, focusing resources on high-growth e-commerce segments. Own-brand cross-border e-commerce platforms include Amazon, Walmart, TEMU, and TikTok, and social media channels include Facebook and Instagram. Major product lines under brands like Sweet Furniture and Colamy include ergonomic chairs, height-adjustable desks, storage cabinets, and functional sofas. As of the report date, the Company has five warehousing and distribution centers across New Jersey, California, and other U.S. regions, covering approximately 350,000 square meters, enabling fast delivery and lowering cross-border logistics costs.

Dkt. 34-11, Ex. 9 at 16. Further, a sub-section titled "Cross-Border E-Commerce & Overseas Warehousing Elevate Foreign Trade" states:

---

[2] The Court agrees with FDW that this report is admissible as a party admission. Originally filed by Henglin, it was obtained through the Shanghai Stock Exchange website and translated by a certified Mandarin interpreter. See Fed. R. Evid. 801(d)(2); In Mills v. Ethan Allen Interiors, Inc., No. CV 15-01842-BRO-KKx, 2016 WL 7655772, at *7, n.16 (C.D. Cal. Aug. 10, 2016) (finding that the defendant's Form 10-K filed with the Securities Exchange Commission was admissible as a party admission). See also Novoselac v. ISM Vuzem d.o.o., No. 21-CV-08654-BLF, 2025 WL 345922, at *4 (N.D. Cal. Jan. 29, 2025) (noting that "foreign language documents are admissible only if translated by a certified interpreter.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

> The Company actively promotes its global strategy and cross-border e-commerce development by building a worldwide supply chain system, accelerating overseas brand expansion, and establishing overseas warehouses close to target consumers. This injects new momentum into export growth and takes foreign trade to a new level. Sales channels now cover major platforms such as Amazon, Walmart, TEMU, and TikTok, and also extend to Facebook and Instagram for multidimensional online marketing. This strategy improves channel coverage, market share, and brand presence, shaping a second growth curve for the Company. As of this report date, the Company has set up warehousing and distribution centers across five major regions in the U.S., including New Jersey, covering a total area of approximately 350,000 square meters, enabling efficient last-mile delivery and lowering cross-border logistics costs.

Id. at 14. In another section, "overseas warehouse" is defined as:

> A logistics service model involving storage facilities established in target markets abroad. In cross-border ecommerce, domestic enterprises ship goods in bulk to overseas warehouses for local storage, sorting, packing, and delivery. This improves delivery speed and order fulfillment efficiency. Services typically include first-leg shipping, warehouse management (via remote logistics systems), and local delivery through postal or courier services.

Id. at 4. Accordingly, in its own words, Henglin establishes overseas warehouses in its "target markets abroad," in locations that are "close to [its] target consumers." One of these locations is California. See dkt. 34-11, Ex. 9 at 16. This express targeting of the forum state constitutes "express aiming" under the purposeful direction test. Express aiming "requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum… [S]omething more—conduct directly targeting the forum—is required to confer personal jurisdiction." Ayla, 11 F.4th at 981. Here, FDW has adduced sufficient evidence of "something more" through evidence that Henglin aims its activities toward California consumers.

Henglin argues that the 2024 Semi-Annual Report should not be considered because it conflates Henglin's activities with the activities of its subsidiaries. Further, Henglin argues that "[t]he cases are unanimous that consolidated reporting is standard business practice and will not support jurisdiction in the absence of evidence establishing an agency relationship." Supp. Reply at 6 (citing BBA Aviation PLC v. Superior Ct., 190

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

Cal. App. 4th 421, 432 (2010) (quoting Sonora Diamond Corp. v. Superior Ct., 83 Cal. App. 4th 523, 549 (2000)) and Evangelista v. Just Energy Mktg. Corp., No. SACV 17-02270-CJC-SSx, 2018 WL 4850380, at *4 (C.D. Cal. June 11, 2018)).

  The Court finds that the authority relied upon by Henglin is distinguishable, as it examines whether consolidated reporting constitutes evidence of an alter ego finding, *not* whether consolidated reporting can be evidence of a parent corporation's "express aiming" of its activities toward a forum state. In Sonora, the California Court of Appeal found that "[c]onsolidating the activities of a subsidiary into the parent's annual reports is a common business practice… Consequently, the use of 'we' or 'the Company' or 'Diamond' in the several reports in evidence did not prove that Diamond and Sonora Mining were, in actual practice, a single entity." Sonora, 83 Cal. App. 4th at 549. The California Court of Appeal further stated that "[i]ndeed, in the reports the word 'Company' was defined as including both Diamond and Sonora Mining." Id. at 550, n.17. Similarly, in BBA Aviation, the California Court of Appeal found that consolidated reports did not support the trial court's finding that BBA was not a holding company, given that the report referenced BBA's subsidiaries as a "portfolio," suggesting BBA's "passive role in operations." BBA Aviation, 190 Cal. App. 4th at 432. Further, it held that "[t]he use of 'we' or 'the Company' or 'BBA' does not prove that BBA and Ontic were a single entity in practice and does not turn a holding company into an operating company." Id. Finally, in Evangelista, the Court found that the defendant's annual reports did not support jurisdiction, because they "refer[red] to the 'Company' and 'Just Energy' when describing the activities of JEG [the parent company] and its subsidiaries, and [did] not establish that JEG carried out any specific activity mentioned[.]" Evangelista, 2018 WL 4850380, at *4.

  Additionally, the Court finds that the 2024 Semi-Annual Report relied upon by FDW is distinguishable from those in Sonora, BBA Aviation, and Evangelista because it explicitly defines the terms "Henglin, Inc., Henglin, Company," and "This [C]ompany" as "Refers to Henglin Home Furnishing Co., Ltd." Dkt. 34-11, Ex. 9 at 4. The table of definitions in this section of the report includes separate definitions for several subsidiaries, including Henglin Trading, Yongyu Home Furnishing, Zhejiang Hengjian, Hengxin Metal, and Kitchen Master. Id. In another section, Nouhaus, Inc. is referred to as a "[s]ubsidiar[y] engaged in overseas operations[.]" Id. at 75. Further, in a section regarding taxpayer entities and their applicable corporate income tax rate, nearly 40 entities are listed, including "The Company" and "Nouhaus, Inc.," as separate entities.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

Id. at 104-105.  It therefore appears that the statement proffered by FDW as evidence of express aiming—"*The Company* actively promotes its global strategy and cross-border e-commerce development by… establishing overseas warehouses close to target consumers"—refers to actions taken by Henglin itself, not Nouhaus, Inc.  See id. at 14 (emphasis added).

Furthermore, the Court finds that Henglin expressly aimed its activities toward California through its shipments to and relationships with California-based consignees and logistics partners, including its subsidiary, Nouhaus, Inc.  "[S]ome Courts have found the express aiming prong is satisfied when defendants knowingly conduct regular business with individuals in the forum state and repeatedly ship goods into the forum." Adam v. Barone, No. 20-CV-00761-EMC, 2020 WL 4584182, at *9 (N.D. Cal. Aug. 10, 2020).  The bills of lading submitted by FDW appear to show that Henglin has "repeatedly" shipped goods into California, from at least November 2023 to March 2025, and has "regular[ly]" conducted business with California-based entities including Nouhaus, Inc., Quartz Logistics, Tmall, Inc., and Acme Furniture Industry, Inc.  See dkt. 34-22, Ex. 20; dkt. 34-23, Ex. 21.

Resolving factual disputes in FDW's favor, it appears from the cited sections of the 2024 Semi-Annual Report and the bills of lading that Henglin ships its products to California and expressly uses its California-based subsidiary, Nouhaus, Inc., to warehouse and distribute them in California.  These activities constitute "express aiming" because they are "contacts that the defendant [it]self create[d] with the forum."  See Walden v. Fiore, 571 U.S. 277, 277 (2014) (emphasis omitted).  See also Paramount Farms Int'l LLC v. R.A.W. Real & Wonderful, LLC, No. CV 14-581 GAF (VBKX), 2014 WL 12597157, at *4 (C.D. Cal. Apr. 4, 2014) (finding that conduct of non-resident defendant was expressly aimed at California where defendant entered into agreement with California distributor and shipped 576 bags of product to the California distributor "for the purpose of furthering its business interests"); DFSB Kollective Co. v. Tran, No. 11-CV-01049-LHK, 2011 WL 6730678, at *3 (N.D. Cal. Dec. 21, 2011) (finding that conduct of foreign defendant was expressly aimed at California where, *inter alia*, defendant "used several California companies to further his scheme of perpetuating" violations of plaintiff's copyright).

Henglin's argument about FDW's failure to establish an alter ego relationship between Henglin and Nouhaus, Inc. is unavailing.  The Ninth Circuit has held that, while the existence of a parent-subsidiary relationship is insufficient "on its own to justify

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

imputing one entity's contacts with a forum state to another," a local entity's contacts may be imputed to its foreign affiliate if there is "an alter ego relationship between the entities." Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015). The Court finds that Henglin purposefully directed its activities at California not because of its subsidiary's contacts with California, but because of Henglin's use of its subsidiary to expressly target the California market and California consumers. Accordingly, FDW is not required to prove that Henglin and its subsidiary are alter egos in order to establish that Henglin purposefully directed its activities toward California. See RB Distribution Inc. v. Skyward Auto. Prods. LLC, No. CV-23-01068-PHX-GMS, 2024 WL 3413969, at *4 (D. Ariz. July 15, 2024) (finding that foreign corporation defendant's argument about the lack of alter ego evidence "miss[ed] the mark," given that plaintiff showed purposeful direction instead by evidence of the defendant's "established channels by which it sends allegedly infringing products" to an Arizona distributor).

The last element of "purposeful direction" requires that the defendant's intentional act "caus[ed] harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 805. "This element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1131 (9th Cir. 2010). Here, the Court finds that, given that Henglin exported its products to California and allegedly fraudulently imported them into California, it was foreseeable that any resulting harm would occur in California.

Turning to the second prong of the specific jurisdiction inquiry, the Court finds that FDW has met its burden in establishing that its claim "arises out of or relates to the defendant's forum-related activities." See Schwarzenegger, 374 F.3d at 802. The Ninth Circuit applies "the 'but for' test to determine the 'arising out of' requirement." Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 761 (9th Cir. 1990). However, a strict causal showing is not required in every circumstance. See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 362 (2021) ("The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."). Here, the Court finds that, but for Henglin's intentional act of exporting and expressly aiming its products toward California, FDW, as its competitor, would not have been injured by Henglin's allegedly deceptive pricing scheme. The Court is not persuaded by Henglin's argument that FDW failed to satisfy this prong because it failed to respond to Henglin's jurisdictional interrogatory and provide facts showing that Henglin imported products that competed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

with FDW's products. See Supp. Reply at 5. As an initial matter, the Court did not authorize Henglin to serve contention interrogatories on FDW during the discovery period. See dkt. 31 at 11-12. Further, the present inquiry—whether the Court has specific jurisdiction over Henglin—is distinct from the merits of FDW's claims, which allege that Henglin fraudulently undervalued its products in the import process.

Given that FDW has met its burden to demonstrate that the first two prongs of the specific jurisdiction test are met, the Court considers whether Henglin has met its burden under the third prong, in showing that the exercise of jurisdiction would be unreasonable. Henglin contends that it would be unreasonable to subject it to personal jurisdiction because FDW "has no evidence" that Henglin imported goods into California and because FDW's claims are "incoherent." Supp. Reply at 7-8. Again, the Court is not persuaded by these arguments, as they focus on the merits of FDW's claims, not the reasonableness of exercising jurisdiction.

Furthermore, once the first two prongs are satisfied, there is a presumption that the exercise of specific jurisdiction is reasonable. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Henglin has not rebutted this presumption because it has not addressed any of the Ziegler factors in its arguments. See Ziegler, 64 F.3d at 475 (holding that reasonableness is determined by a balancing of: (1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum). Henglin has therefore made no showing of the burden posed by litigating in California, the extent of conflict between this litigation in California and Henglin's incorporation in China, or the existence of an alternative forum where this dispute could be more efficiently resolved. Accordingly, because Henglin purposefully directed its activities toward California, California has an interest in protecting its citizens from Henglin's allegedly fraudulent conduct, and Henglin has not carried its "heavy burden of rebutting the strong presumption in favor of jurisdiction," the Court finds that the exercise of jurisdiction in these circumstances is reasonable. See Ballard, 65 F.3d at 1500.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:24-cv-07118-CAS-PDx | Date | July 29, 2025 |
|---|---|---|---|
| Title | Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd. | | |

## IV. CONCLUSION

In accordance with the foregoing, the Court **DENIES** Henglin's Rule 12(b)(2) motion. The Court **RESERVES JUDGMENT** on Henglin's Rule 12(b)(6) motion.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |